**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0302n.06

No. 12-5400

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Mar 26, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SAM BYRD, | ) | |
| | ) | |
| *Plaintiff-Appellant,* | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| ALPHA ALLIANCE INSURANCE CORP., | ) | DISTRICT OF TENNESSEE |
| | ) | |
| *Defendant-Appellee.* | ) | |

BEFORE:  COLE and GRIFFIN, Circuit Judges; GWIN, District Judge.[*]

GWIN, District Judge.  Plaintiff Sam Byrd appeals the district court's grant of summary judgment in favor of Defendant Alpha Alliance Insurance Corporation[1] ("Alpha Alliance") and dismissal of Byrd's fire-loss claim based on spoliation of evidence.  While finding support for the district court's finding that Appellant destroyed relevant evidence, we find it erred in sanctioning the spoilation with dismissal. .  We therefore AFFIRM IN PART, REVERSE IN PART, and REMAND for proceedings consistent with this opinion.

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

[1]It is unclear whether Appellee's name is spelled "Alpha Alliance" (as appears on its briefing) or "Alfa Alliance" (as appears on the fire report).  To be consistent with the district court, we adopt "Alpha Alliance."

## I. BACKGROUND

### A. Spoliation

On June 20, 2009, and just a week after receiving notice of the bank's intent to foreclose on his home for failure to make timely mortgage payments, a fire destroyed Byrd's home. At the time, Byrd had a homeowner's insurance policy with Alpha Alliance. Byrd says that the fire was accidental.[2]

On the evening of the fire, Byrd says he started, but then abandoned an effort to bake biscuits. He says he preheated his oven but then changed his mind and decided to go out. Byrd claims he turned the oven off before setting out for a nearby restaurant at approximately 8:30 p.m. Giving a somewhat illogic explanation of where he went after leaving his home, Byrd returned home at approximately 9:40 p.m. Upon returning home, Byrd says he smelled smoke and saw water running out of the kitchen door leading to the garage. After removing his vehicles from the garage, Byrd attempted to enter the home, but fire prevented him. He shut the garage door and called 9-1-1.

Two days later, Byrd reported his loss and made a claim. Alpha Alliance sent an adjuster, Mike Palmer, to meet Byrd and investigate his claim. According to Alpha Alliance, Palmer told Byrd not to tamper with his home or its contents. According to Byrd, Palmer did not give him any instructions concerning the fire. Nonetheless, Byrd concedes that Palmer told him that Alpha Alliance "might" send someone to the home to examine the fire damage and, in particular, inspect the stove containing the glass top range.

---

[2]This is Byrd's second home lost in a fire. In 1994, Byrd lost a home that he was in the process of building at the same location.

The next day, June 23, 2009, Byrd entered the home and took it upon himself to inspect the stove's wiring. He stuck a shovel behind the stove, flipping it over. The range operated through heating elements embedded in a flat glass top and the glass top shattered as it hit the floor.

On June 27, 2009, Gary Young, an Alpha Alliance inspector, conducted an investigation. Because the glass top range was shattered, Young said he was unable to determine whether an unattended pot left on the range top had caused the fire. But Byrd had never claimed that some flammable materials had ever been inadvertently left on the range. In contrast, Byrd claimed the opposite. During his inspection, Young noted unusual burn patterns on the kitchen floor, which could have been the result of an accelerant. More important, the inspection showed burn patters on the wall adjacent to the range strongly suggesting that the fire began from an area on top of the range.[3] Inspection evidence indicated the fire originating on top of one of the right side eyes of the range, and yet all knobs controlling the stove top were in the off position. According to Young's report, Palmer had instructed Byrd not to move or alter anything until an inspector could arrive at the site and conduct a fire scene examination. Byrd admitted that he had flipped the range over using a shovel.

---

[3]The report stated:

> Further inspection of the kitchen area revealed bum patterns which were indicative of a fire clearly originating at range top level. A clear and pronounced "V" burn pattern emanated up the wall behind the range, from the exact level as the top of the range in question. The charring and burn patterns exhibited by not only the wall behind and above the range, but by the ceiling support joists above the range, was clearly indicative of a fire originating up on top of the range top, and then burning secondarily up and away from that point, until engaging the attic space, and various and assorted other areas of the residence.

After Alpha Alliance denied his claim, Byrd filed a complaint in state court alleging breach of contract. Alpha Alliance thereafter removed the action to federal court.

With its answer, Alpha Alliance said that Byrd's complaint failed to state a claim upon which relief could be granted. It also denied that it had an opportunity to fully investigate the fire because Byrd tampered with the evidence. According to Alpha Alliance, the policy excluded coverage because of Byrd's alleged arson. In addition, Alpha Alliance said that Byrd failed to comply with the policy because he did not cooperate with Alpha's investigation. Accordingly, Alpha Alliance requested dismissal of the complaint with prejudice and costs. Finally, in a counterclaim, Alpha Alliance sought reimbursement in the amount of $206,377.99 for mortgage payments that it was required to a bank holding a lien on the property.

On October 28, 2011, Alpha Alliance moved for summary judgment. In particular, it said that Byrd failed to comply with the policy's cooperation clause, that required complete cooperation with the investigation of any loss. In addition, Alpha Alliance said Byrd intentionally destroyed evidence needed to determine whether the fire was accidental or arson. With this argument, Alpha Alliance alleged that Byrd's actions "constitute[d] spoliation of evidence."

The district court denied Alpha Alliance's argument that it should get summary judgment on the lack of cooperation claim. It found that a reasonable jury could find that Byrd cooperated with Alpha Alliance under the terms of the policy and, therefore, summary judgment based on an alleged violation of the policy's cooperation clause was improper. But, the district court granted summary judgment to Alpha Alliance as a sanction for Byrd's spoliation of evidence. The district court found that (1) Byrd had an obligation to preserve the stove containing the glass top range; (2) Byrd

4

destroyed the oven with a culpable state of mind; and (3) the destroyed evidence was relevant to Alpha Alliance's claims or defenses.

On March 12, 2012, the district court entered an agreed judgment, wherein the parties agreed that the grant of summary judgment precluded Byrd's defenses to the counterclaim. The district court thereafter awarded Alpha Alliance $206,377.99 plus discretionary costs in the amount of $3,863.38. Although agreeing to this judgment, Byrd reserved his right to appeal the grant of summary judgment based on spoliation of evidence. This appeal followed.

## II. ANALYSIS

The district court's summary judgment is reviewed de novo. We review the district court's imposition of sanctions for an abuse of discretion. *See generally Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991). This Court has reiterated that this abuse of discretion standard applies to review of sanctions for spoliation. *See, e.g.*, *Adkins v. Wolever*, 692 F.3d 499, 503 (6th Cir. 2012) [hereinafter *Adkins II*] ("Accordingly, we review the district court's decision not to impose a spoliation sanction under the abuse of discretion standard, 'giving great deference to the district court's credibility determinations and findings of fact.'") (alteration omitted) (quoting *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553-54 (6th Cir. 2010)). The district court's factual determinations giving rise to the spoliation finding are reviewed for clear error. *See Adkins II*, 692 F.3d at 506 ("The district court reviewed the evidence and concluded that Wolever was not culpable because he had no control over the evidence. *This conclusion was not clearly erroneous*.") (emphasis added).

*A. The Finding of Spoliation*

A district court may sanction a litigant for spoliation of evidence if three conditions are met. First, the party with control over the evidence must have had an obligation to preserve it at the time it was destroyed. *Beaven*, 622 F.3d at 553. Second, the accused party must have destroyed the evidence with a culpable state of mind. *Id.* And third, the destroyed evidence must be relevant to the other side's claim or defense. *Id.* (defining "relevant" as "such that a reasonable trier of fact could find that it would support that claim or defense) (quotation marks and citation omitted). The party seeking the sanction bears the burden of proof in establishing these facts. *Id.*

*1. Obligation to preserve*

The district court did not err in concluding that Byrd had an obligation to preserve the stove top. "An obligation to preserve may arise when a party should have known that the evidence may be relevant to future litigation . . . ." *Id.* (internal quotation marks omitted). As the district court explained:

> It is undisputed that [Byrd] turned over the oven and caused the glass top range to shatter after he filed a claim with his insurer and was visited by its adjuster, Mr. Palmer. While the precise contents of Mr. Palmer's instructions to [Byrd] during his visit are disputed, [Byrd] does admit that Mr. Palmer told him that [Alpha Alliance] might send someone out to examine the fire damage to his home, particularly to the oven. Thus, at that time, [Byrd] knew, at the very least, that, in the course of investigating his claim, [Alpha Alliance] was interested in a particular piece of evidence (his oven), and that there was a possibility that [Alpha Alliance] might send someone to his residence to examine it. Moreover, [Byrd] himself was aware of the oven's importance in determining the fire's cause, as he had previously observed that the flames were centered on the oven when he entered the kitchen during the fire. Indeed, he claims that his own "investigation" of the source of the fire was centered on the stove. The court finds that a reasonable insured acting under similar circumstances would have known that the oven may be particularly relevant to future litigation arising out of the fire loss claim.

Byrd argues that the specifics of the conversation with Palmer are disputed, and he denies that Palmer told him not to touch anything. But this argument, assuming its validity, does not destroy the district court's analysis. The district court acknowledged that the precise contents of Palmer's instructions to Byrd were unknown. More important, Byrd acknowledges that Palmer notified Byrd that Alpha Alliance might be sending someone to the home to investigate the source of the fire. And Byrd knew the fire centered at the stove. Because Byrd knew Alpha Alliance would likely send someone to examine the stove as a possible source of the fire, he knew the stove had legal relevance to his fire-loss claim. Whether Byrd *in fact* knew that the oven had legal relevance is beside the point. We apply an objective, not subjective standard. Because Byrd "*should have known* that the evidence may be relevant to future litigation," *Beaven*, 622 F.3d at 553 (emphasis added), the first element of spoliation is met.

### 2. Culpable state of mind

The second element, a culpable state of mind, requires a showing that the party destroyed the evidence knowingly or negligently. *Id.* at 553–54. With regard to this element, the district court reasoned:

> [S]hortly after he was told that [Alpha Alliance] was interested in his oven and that it might send someone to his home to inspect it, [Byrd] took a shovel and turned his oven over, thereby causing its glass top range to shatter into pieces. [Byrd] thus consciously destroyed evidence known to be of particular interest to his insurer prior to the possible arrival of one of its investigators. [Byrd] did so notwithstanding his own awareness of the oven's importance in determining the fire's cause. [Byrd's] conduct under these circumstances demonstrates bad faith.

That Byrd consciously destroyed the evidence is debatable, but not clearly erroneous. The shattering of the glass top was a foreseeable result of tipping the stove onto its side, and thus Byrd

7

was at the very least negligent. His claim that he "had no idea turning over the stove would destroy the glass top" is not credible. The range was made of *glass*, and he flipped the stove over using a shovel without so much as easing its descent to the floor.

Further, it makes no difference that Byrd could have destroyed the glass range by smashing the top of it with the shovel. The issue of culpability focuses on the actions actually undertaken—that Byrd could have acted more maliciously does not make the district court wrong when it found that Byrd knowingly and intentionally destroyed legally relevant evidence. Additionally, although Byrd denied that he knew of the stove's *critical* importance, he admitted that he knew that it had *some* importance. Destroying evidence known to have some importance to the determination of a fire's cause satisfies the requisite culpability for evidence spoliation.

*3. Relevance*

Alpha Alliance satisfies the third condition for finding spoliation, which requires a showing that the evidence "would have been relevant to the contested issue . . . such that a reasonable trier of fact could find that it would support [the moving party's] claim." *Beaven*, 622 F.3d at 554-55 (internal quotation marks and citations omitted). The district court can consider circumstantial evidence in analyzing the import or specifics of the destroyed evidence. *Id.* at 555.

The district court did not err, nor does Byrd contend that it did, in determining that the oven was relevant to Alpha Alliance's claims or defenses. The fire originated from the oven, and Byrd's destruction of the glass top range impaired Alpha Alliance's determination of the fire's precise cause. The district court did not err in concluding that Byrd, at least negligently, destroyed relevant evidence in his control that he should have known was necessary for litigation.

B.  *Sanctions*

The same cannot be said of the district court's imposition of the most severe sanction possible.  Although "[d]istrict courts have broad discretion in crafting a proper sanction for spoliation," that sanction must "serve both fairness and punitive functions." *Arch Insurance Cos. v. Broan-Nutone, LLC*, No. 11-6221, 2012 WL 6634323 (6th Cir. Dec. 21, 2012) (citation omitted). Although a close call, the grant of summary judgment, as well as a $206,377.99 counterclaim, in favor of Alpha Alliance ultimately failed to uphold this balance.

In *Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) (en banc) [hereinafter *Adkins I*] , the Sixth Circuit adopted the majority approach of applying federal law, instead of state law, for spoliation sanctions.  *Adkins I* held that the sanction should have some correlation to the degree of fault:

> [A] proper sanction will serve the purposes of leveling the evidentiary playing field and sanctioning the improper conduct. Because failures to produce relevant evidence fall along a continuum of fault-ranging from innocence through the degrees of negligence to intentionality, the severity of a sanction may, depending on the circumstances of the case, correspond to the party's fault. Thus, a district court could impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence.

*Id.* at 652-53 (parentheses, quotation marks, and alterations omitted).

We clarified the reach of *Adkins I* in *Beaven*.  There, the district court imposed a non-rebuttable adverse inference after finding that the defendants had destroyed a key piece of evidence. *Beaven*, 622 F.3d at 553. We ultimately affirmed the adverse inference's imposition after concluding that the defendants were on notice regarding the importance of the evidence and their destruction of evidence was intentional. *Id.* at 554-55. We found the adverse inference appropriate

given that the evidence's destruction "severely compromised" the plaintiffs' case. *Id.* at 555.

Perhaps most importantly for our purposes, the Court in *Beaven* cited favorably to *Silvestri v. General Motors Corp.*, 271 F.3d 583, 593 (4th Cir. 2001). In *Silvestri*, the Fourth Circuit affirmed a district court's imposition of a dismissal sanction when the evidence's destruction denied the non-offending party access to the only evidence from which it could develop its case. *Id.* ("[D]ismissal is severe and constitutes the ultimate sanction for spoliation. It is usually justified only in circumstances of bad faith or other like action. But even when conduct is less culpable, dismissal may be necessary if the prejudice to the defendant is extraordinary, denying it the ability to adequately defend its case.") (citation omitted).

Dismissal should rarely be imposed and only when significant prejudice results from the evidence's destruction. The *Silvestri* factors supporting dismissal are not present here. As became clear during oral argument, Alpha Alliance was unable to identify exactly why it was prejudiced by the destruction of the glass top. Rather, it could point only to the statements made in the insurance investigator's report.[4] A closer inspection of the adjuster's report also makes clear that the glass top was not the only evidence of arson. The investigator first wrote that the shattered top "made it absolutely impossible to conduct any conclusive examination or assessment of the glass top of the

---

[4]The insurance investigator's report constitutes inadmissible hearsay, though Byrd failed to raise this issue on appeal. Presumably, it would evade the hearsay bar by being admitted under Federal Rule of Evidence 803(6) as a business record. However, the business records exception does not apply when the record was made in anticipation of litigation. *See United States v. LaValley*, 957 F.2d 1309, 1314 (6th Cir. 1992). If Byrd is presumed to have known that the stove would be necessary for litigation, it is incongruous to say that the investigatory report discussing that stove is not made in anticipation of litigation.

range in question." He states this conclusion without any explanation of how a heat resistant flat glass panel would show anything.

But more important, the investigator then states "that the patterns on the kitchen floor were at least consistent with the possibility of accelerant," and that there were "revealed burn patterns which were indicative of a fire clearly originating at range top level." Even if we accepted the investigator's unsupported conclusion that the investigation had been hampered by the shattered glass top, the investigation was not significantly impaired. Stated otherwise, the defendant gave no persuasive explanation how the flat glass top was crucially important to the investigation, especially in light of the evidence of accelerants and the evidence of burn patterns. Thus, unlike *Silvestri*, the non-offending party had evidence from which it could develop its case.

Moreover, the district court's analysis as to why the sanction it chose was both fair and punitive is lacking. The sanction is excessively harsh in light of other available options, such as an adverse instruction. The district court stated that "it is conceivable that an appropriate instruction to the jury could level the evidentiary playing field," but imposed a harsher sanction "in light of the plaintiff's egregious conduct." The district court went on to note that Byrd destroyed "the single piece of evidence that was essential to determining whether the fire was accidental or an act of arson." As already mentioned, this is belied by the record; other evidence demonstrates that Alpha Alliance could still succeed on its claims even absent the glass top.

As an adverse instruction would have permitted Alpha Alliance to adequately defend itself, the district court abused its discretion by its use of "the sanction of last resort." *Beil v. Lakewood*

No. 12-5400
*Byrd v. Alpha Alliance Insur. Corp.*

*Eng'g & Mfg. Co.*, 15 F.3d 546, 552 (6th Cir. 1994). While we generally afford the district court

broad discretion in crafting an appropriate sanction, that discretion is not without its limits.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM IN PART, REVERSE IN PART, and REMAND for

proceedings consistent with this opinion.

No. 12-5400
*Byrd v. Alpha Alliance Insur. Corp.*

**GRIFFIN, Circuit Judge, concurring in part and dissenting in part.**

Although I agree that the record establishes the elements of evidence spoliation, I disagree with the majority's holding that the district court abused its discretion by imposing the sanction of dismissal. Because I conclude that the district court did not abuse its discretion, I would affirm the district court's judgment in its entirety. Accordingly, I respectfully dissent.

We review a district court's decision to impose a sanction for evidence spoliation for an abuse of discretion. *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 333 (6th Cir. 2007) (internal quotation marks omitted). We may reverse only if a review of the record leaves us with a definite and firm conviction that a clear error in judgment has been made. *Id.*

In the present case, the majority terms its decision to reverse the district court as "a close call." In my view, such a characterization implicitly acknowledges that the district court did not make a "clear error in judgment" and thus did not abuse its discretion in its choice of a sanction. A "close call" is seldom, if ever, an abuse of discretion.

As part of its "inherent power to control the judicial process," the district court has "broad discretion in crafting a proper sanction for spoliation." *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (en banc) (internal quotation marks omitted). Because the sanction chosen "should serve both fairness and punitive functions," its severity may correspond to the party's culpability, "ranging from innocence through the degrees of negligence to intentionality." *Id.* at 652–53 (internal

13

quotation marks omitted). "[T]he fact-intensive inquiry into a party's degree of fault is for a district court." *Id*. at 653 (internal quotation marks omitted). "[Dismissal] should be imposed only if the court concludes that the party's failure to cooperate in discovery was willful, in bad faith, or due to its own fault." *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 552 (6th Cir. 1994). "A district court does not abuse its discretion in dismissing a case, even though other sanctions might be workable, if dismissal is supported on the facts." *Id*. (internal quotation marks omitted).

> In this case, the district court concluded that Byrd destroyed the glass stove top in bad faith:

> > [S]hortly after he was told that [Alpha Alliance] was interested in his oven and that it might send someone to his home to inspect it, [Byrd] took a shovel and turned his oven over, thereby causing its glass top range to shatter into pieces. [Byrd] thus consciously destroyed evidence known to be of particular interest to his insurer prior to the possible arrival of one of its investigators. [Byrd] did so notwithstanding his own awareness of the oven's importance in determining the fire's cause. [Byrd's] conduct under these circumstances demonstrates his bad faith.

The district court found Byrd's conduct "especially egregious given the already suspicious circumstances surrounding the fire—including, among other things, its close temporal proximity (one week) to when [Byrd] received notice of his bank's intent to foreclose on his home." The district court's finding of bad faith was not clearly erroneous, as the majority acknowledges.

Nor did the district court misapply the law. *Beaven* is this court's most recent ruling regarding sanctions for evidence spoliation, but its relevance here is limited because the sanction under review in that case was an adverse inference, not dismissal. *Beaven*, 622 F.3d at 553–556. Nonetheless, *Beaven* cited favorably to *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583 (4th Cir. 2001), which offers us useful guidance in evaluating the propriety of a dismissal sanction:

14

> [Dismissal] is usually justified only in circumstances of bad faith or other like action. But even when conduct is less culpable, dismissal may be necessary if the prejudice to the defendant is extraordinary, denying it the ability to adequately defend its case. . . . [T]he district court has discretion to fashion an appropriate sanction for conduct which abuses the judicial process. . . . [O]utright dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the court's discretion.

> [S]ometimes even the inadvertent, albeit negligent, loss of evidence will justify dismissal because of the resulting unfairness: The expansion of sanctions for the inadvertent loss of evidence recognizes that such physical evidence often is the most eloquent impartial "witness" to what really occurred, and further recognizes the resulting unfairness inherent in allowing a party to destroy evidence and then to benefit from that conduct or omission. In fashioning an appropriate sanction, . . . courts have focused not only on the conduct of the spoliator but also on the prejudice resulting from the destruction of the evidence.

> At bottom, to justify the harsh sanction of dismissal, the district court must consider both the spoliator's conduct and the prejudice caused and be able to conclude either (1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim.

*Silvestri*, 271 F.3d at 593 (internal quotation marks and citations omitted).

The majority holds that the district court's dismissal sanction is improper under *Silvestri*. I disagree. The majority misreads *Silvestri* to justify dismissal "only when significant prejudice results from the evidence's destruction." The majority's focus on prejudice is overly narrow because *Silvestri* identifies *two* circumstances justifying dismissal: (1) the plaintiff destroyed the evidence in bad faith; *or* (2) the destruction resulted in extraordinary prejudice to the defendant. *Silvestri*, 271 F.3d at 593. Significantly, the majority only takes issue with the district court's finding of prejudice; it does not disagree with the district court's culpability determination. ("That Byrd consciously destroyed the evidence is debatable, but not clearly erroneous."). Because the district court did not

15

clearly err in finding that Byrd acted in bad faith, dismissing the case was not an abuse of discretion.

*See Gentek Bldg. Prods.*, 491 F.3d at 333; *Silvestri*, 271 F.3d at 593; *Beil*, 15 F.3d at 552.

Further, the majority errs in concluding that Byrd's destruction of the glass stove top was insufficiently prejudicial to warrant dismissal. The majority first reasons that "Alpha Alliance was unable to identify exactly why it was prejudiced by the destruction of the glass top." However, if a party can identify exactly what evidence would show if it were available, then it is not truly "prejudiced" by its absence. The "prejudice" caused by destroyed evidence is the inability to determine information important to a claim or defense. As the majority acknowledges, "[t]he fire originated from the oven, and Byrd's destruction of the glass top range impaired Alpha Alliance's determination of the fire's precise cause." The fire investigator indicated in his report that "the fact that the glass top of the range was broken prior to my arrival . . . makes it impossible for me to determine, to a conclusive degree of scientific certainty, what the specific initial ignition source for the fire might have been." In a fire-loss claim, an insurer is obviously prejudiced if it cannot determine the fire's cause because the defendant has destroyed the object from which the fire originated.

Second, the majority faults the fire investigator for failing to explain "how a heat resistant flat glass panel would show anything." Yet the fire investigator explained: "unlike regular ranges, the only way to determine, on many occasions, if a fire originated due to a pot being left unattended on one of the eyes of the range, is to be able to carefully examine the glass top of the range, which will oftentimes exhibit melted debris, evidence where the glass has sustained unusually excessive temperatures or degradation." In other words, although heat resistant, a preserved glass stove top

could have revealed whether the fire originated by accident due to a pot being left unattended on one of the eyes of the range. Ruling out possible accidental causes of a fire is critically important to an insurer, such as Alpha Alliance, who has denied a fire-loss claim because of suspected arson and is faced with defending that position in court.

Third, the majority places great emphasis on the fire investigator's observation of burn patterns that "were at least consistent with the possibility of accelerant," which it says provides alternative "evidence from which [Alpha Alliance] could develop its case." However, dismissal under *Silvestri* does not require a complete inability to defend, but a substantial impairment to the ability to defend, and again, only in cases where the spoliator's conduct falls short of bad faith. *Silvestri*, 271 F.3d at 593 ("[T]he district court must . . . be able to conclude either (1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim.").

The majority's final criticism is that dismissal "is excessively harsh in light of other available options," apparently unconvinced that the sanction chosen best serves both fairness and punitive functions. The fact that the majority might have imposed a different sanction in the first instance, however, does not make the district court's chosen course an abuse of discretion. *See Beil*, 15 F.3d at 552 ("A district court does not abuse its discretion in dismissing a case, even though other sanctions might be workable, if dismissal is supported on the facts."). Although I tend to agree that "an adverse instruction would have permitted Alpha Alliance to adequately defend itself," the district court nonetheless acted within its broad discretion to craft a sanction that it believed served both

17

fairness and punitive functions and corresponded to Byrd's culpability. *See Adkins*, 554 F.3d at 652–53. The district court believed that a harsher sanction was necessary given Byrd's "egregious conduct" and to "deter would-be spoliators from engaging in similar conduct in the future." The district court's reasoning is sound, supported by the record, and reflects a proper application of the law.

Because the district court did not make a clear error in judgment, it did not abuse its discretion in its choice of the sanction of dismissal. For this reason, I would affirm the district court's judgment in its entirety.