Anthony P. Patti, UNITED STATES MAGISTRATE JUDGE
I. OPINION
A. Introduction
At the heart of this lawsuit, which was originally filed in state court, are the *770 events of October 27, 2016, when Plaintiff William Culhane alleges he was injured by a service entrance freight door at Wal-Mart's Roseville, Michigan location. Interior video footage submitted to and viewed by the Court shows an apparent Wal-Mart employee, presumably Defendant Cindy Skillman, lowering the garage-like door on Culhane's head while Skillman appears to have her back turned toward the door. (See DE 33-4.) Plaintiff's causes of action are based on negligence and premises liability. (DE 1 at 10-15.) This is not a products liability case, notwithstanding the centrality of the freight door to the incident in question.
Defendants filed their answer to the complaint in state court. Among their affirmative defenses are several that place at least partial blame upon Plaintiff, such as:
• The alleged defect and the condition of the premises were open and obvious . (No. 2)
• The sole and proximate cause of any and all injuries and/or damages allegedly suffered by Plaintiff, are the result of Plaintiffs own conduct . (No. 5)
• The sole and proximate cause of any and all injuries and/or damages allegedly suffered by Plaintiff, are the result of Plaintiffs own contributory and/or comparative negligence . (No. 6)
(DE 1 at 21-23 (emphases added).)
On October 9, 2018, Defendants filed a motion for partial summary judgment, in which they challenge Plaintiff's premises liability count. (DE 33.) Plaintiff has filed a response, Defendants have filed a reply, and Plaintiff has filed a supplemental exhibit. (DEs 37, 43, 47.) That motion will be addressed separately by Judge Tarnow.
B. Instant Motion
Meanwhile, just minutes before Defendants filed their dispositive motion, Plaintiff filed a motion for sanctions, based on Defendants' failure to preserve evidence, specifically: (1) video evidence of the incident; (2) the witness statement of Assistant Manager Cassie Doss; (3) the "garage door" that was pulled down on Plaintiff; and (4) the "vendor book," as testified to by Skillman. (DE 32 at 2 ¶ 5.) Plaintiff seeks, inter alia , an adverse jury instruction, an order striking Defendants' affirmative defenses, and an award of costs and fees associated with this motion. (DE 32 at 11.)
Judge Tarnow has referred this motion to me for hearing and determination, Defendants have filed a response (DE 36), and Plaintiff has filed a reply brief (DE 39), which far exceeds this Court's page limitations. E.D. Mich. LR 7.1(d)(3)(B). As discussed from the bench, the Court will not consider the text of Plaintiff's non-conforming reply brief, although it will consider the two garage door pictures embedded therein. (See DE 39 at 10-11.)
On December 11, 2018, the date set for hearing, attorneys Jonathan R. Marko and Richard G. Szymczak appeared in my courtroom. (DE 42.) After entertaining oral argument, the Court took this matter under advisement.
C. Discussion
"One man's trash is another man's treasure. Aside perhaps from perjury, no act serves to threaten the integrity of the judicial process more than the spoliation of evidence." United Med. Supply Co. v. United States , 77 Fed.Cl. 257, 258 (2007) (internal quotation marks and footnote omitted). By its title, Plaintiff's motion takes issue with Defendants' failure to preserve evidence. " 'Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.' "
*771 Forest Labs., Inc. v. Caraco Pharm. Labs., Ltd. , No. CIV.A.06-CV-13143, 2009 WL 998402, at *1 (E.D. Mich. Apr. 14, 2009) (Friedman, J.) (quoting West v. Goodyear Tire & Rubber Co. , 167 F.3d 776, 779 (2d Cir.1999) (emphasis added) ). As Defendant well knows from its own prior litigation experience in the Fourth Circuit, "[t]he spoliation of evidence rule allows the drawing of an adverse inference against a party whose intentional conduct causes not just the destruction of evidence ... but also against one who fails to preserve or produce evidence-including the testimony of witnesses." Hodge v. Wal-Mart Stores, Inc. , 360 F.3d 446, 450 (4th Cir. 2004) (emphasis added).
1. Electronically stored information (ESI)
a. Exterior video evidence of the incident
Interior video evidence exists. (DE 36 at 5-6, DE 36-2.) However, Plaintiff is in pursuit of the exterior video footage. (See DE 32 at 14-15.) By way of background, it appears that, by a letter dated November 21, 2016, addressed to the attention of Wal-Mart Headquarters' Risk Management Department, and signed by Plaintiff's then-counsel, Defendant Wal-Mart was put on notice that Plaintiff had retained counsel with regard to the October 27, 2016 incident at the Roseville store. (DE 32-2 at 23, 26, 28.) It also appears that, on the same date, Plaintiff's then-counsel sent a letter to "CMI Claim Management Inc." - which Plaintiff describes as "a corporation wholly owned by Defendant Wal-Mart that handles claims and liability determinations arising out of incidents at Wal-Mart stores[,]" - acknowledging receipt of a denial letter and requesting a copy of the video upon which the denial was allegedly based. (DE 32-2 at 25, DE 32 at 3 ¶ 11.)[1]
When Plaintiff's current counsel deposed Defendant Wal-Mart's asset protection manager Michael Terry on May 15, 2018, Terry testified that the "[g]eneral rule of thumb is about 30 days and then it gets rerecorded over." (DE 32-3, DE 36-3 [p. 18].) In order to save the video, he has to take a series of steps. (Id. ) "You go into the user interface on the desktop computer in the AP office and then you select which camera you want , put in the date and time, and then you can save whatever video you want. " (Id. (emphases added) ). Further questioning elicited this exchange:
Q. Which videos did you save?
A. To my knowledge, just the interior shot.
Q. Why didn't you do the exterior shot?
A. I can't remember why.
* * * * *
Q. Is there more video that we can get at this point?
A. At this point, I don't believe so.
Q. Okay. Because it wasn't saved?
A. I'm not 100 percent sure. I don't remember it being saved.
(Id. [pp. 18-19] ) (emphasis added). Terry did not remember viewing the exterior video. (Id. [pp. 18-20].)
Consistently, in an August 1, 2018 discovery response, Defendants stated that they were not in possession of "video evidence from the cameras directly outside the backroom garage door for 30 minutes prior to, during, and 30 minutes after the incident on October 27, 2016." (DE 36-9 at 4.) In other words, the choice as to which footage to save was Terry's; inexplicably, *772 he chose to preserve the interior footage but not the footage from the exterior camera(s).
b. Fed. R. Civ. P. 37(e)
Failures to preserve electronically stored information (ESI) are addressed by Fed. R. Civ. P. 37(e). The most recent amendments to Rule 37, which went into effect in December 2015, include the following language:
If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it , and it cannot be restored or replaced through additional discovery , the court:
(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
(A) presume that the lost information was unfavorable to the party;
(B) instruct the jury that it may or must presume the information was unfavorable to the party; or
(C) dismiss the action or enter a default judgment.
Fed. R. Civ. P. 37(e) (emphasis added).
i. Intent and Sub- Rule 37(e)(2)
To the extent that Plaintiff seeks the imposition of sanctions by "[p]roviding an adverse jury instruction ..." regarding the exterior video evidence (see DE 32 at 27 ¶ 1), the Court must consider whether Defendant Wal-Mart acted with the intent to deprive Plaintiff of "the information's use in the litigation ...." Fed. R. Civ. P. 37(e)(2). Relatedly, the Advisory Committee Notes for the 2015 Amendment provide:
Adverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. Negligent or even grossly negligent behavior does not logically support that inference. Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have. The better rule for the negligent or grossly negligent loss of electronically stored information is to preserve a broad range of measures to cure prejudice caused by its loss, but to limit the most severe measures to instances of intentional loss or destruction.
Fed. R. Civ. P. 37, 2015 Advisory Comm. Note. Likewise, the Sixth Circuit has since noted:
It bears adding that to the extent [Plaintiff] sought an adverse inference instruction for spoliation of electronic information, a 2015 amendment to Civil Rule 37(e)(2) required her to show that [Defendants] had "intent" to deprive her of the information's use. A showing of negligence or even gross negligence will not do the trick. Fed. R. Civ. P. 37, 2015 Advisory Comm. Note. [Plaintiff] would not have been able to show any degree of fault for [Defendant]'s alleged destruction of records, because [ ]he cannot show that [Defendant] destroyed the records-if they even existed in the first place-after it was put on notice of litigation.
Applebaum v. Target Corp. , 831 F.3d 740, 745 (6th Cir. 2016) (emphasis added). See also , e.g. , *773 United States v. Woodley , No. 15-CR-20007, 2016 WL 1553583, at *2-*3 (E.D. Mich. Apr. 18, 2016) (Michelson, J.) (a criminal case noting that Beaven v. U.S. Dep't of Justice , 622 F.3d 540 (6th Cir. 2010) occurred prior to Fed. R. Civ. P. 37(e)(2)'s 2015 Amendment). " Rule 37(e)(2) sanctions are available to address the prejudicial effect of lost ESI only if the loss is shown to have been motivated by an 'intent to deprive another party of the information's use in the litigation.' " Konica Minolta Bus. Sols., U.S.A. Inc v. Lowery Corp. , No. 15-CV-11254, 2016 WL 4537847, at *6 (E.D. Mich. Aug. 31, 2016) (Roberts, J.) (denying without prejudice amended motion for sanctions). As one court has put it, Rule 37(e)(2)'s "intent standard is 'stringent' and 'does not parallel other discovery standards.' " Moody v. CSX Transportation, Inc. , 271 F.Supp.3d 410, 431 (W.D.N.Y. 2017) (quoting Jenkins v. Woody , 2017 WL 362475, *17 (E.D. Va. 2017) (quoting Fed. R. Civ. P. 37(e)(2) ) ).
Rule 37(e)(2)'s Advisory Committee Notes explain that it "does not include a requirement that the court find prejudice to the party deprived of the information [unlike Subsection 37(e)(1) ][,]" but also explain that "[f]inding an intent to deprive another party of the lost information's use in the litigation does not require a court to adopt any of the measures listed in subdivision (e)(2)." Finally, the Advisory Committee Notes provide that "[c]ourts should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant." Fed. R. Civ. P. 37(e), Advisory Comm. Note., 2015 Amendment. Taking all of this into consideration, in light of the factual record, the Court concludes that Plaintiff is entitled to part of the relief sought - "an adverse jury instruction against Defendants" regarding the exterior video evidence. (DE 32 at 27 ¶ 1.) First, as early as the October 27, 2016 occurrence, Defendants had at least some notice that "litigation was reasonably likely." (DE 32 ¶ 15.) Second, although Plaintiff's June 24, 2015 Customer Accident Investigation policy does not create a legal duty, it does provide evidence of Wal-Mart's established method for "gathering details" when an accident has occurred, including taking "photographs," "obtain[ing] video," and "fil[ing] documentation." (See DE 32-4, DE 32 ¶¶ 7, 10.) It also demonstrates that Wal-Mart employees had notice as to the importance of preserving these items. Therefore, it is fair to say that Wal-Mart employees knew to act in accordance with a policy that appears to have existed for more than a year prior to the October 27, 2016 incident at issue in this lawsuit and had notice as to the importance of preserving this particular video evidence when an accident occurs on Wal-Mart property. This is the context in which Terry made his choice to preserve some but not all pertinent video evidence. Third, the claim form dated October 28, 2016 begins by stating that: "You must immediately search for and preserve any and all information and evidence related to this incident. Please follow the guidelines on the Evidence Collection Sheet and Document Preservation Directive." (DE 32-2 at 13-14 (emphasis added).) This was obviously not done, despite notice to the employees that it should be done. Fourth, at his May 15, 2018 deposition, Terry testified, agreed or stated that:
• he just looked at "the interior shot of the receiving area[,]"
• there are "cameras all over the outside, too,"
• "[e]very camera at that Wal-Mart to my knowledge does record[,]"
• he can "look at the cameras from [his] office[,]"
• "General rule of thumb is about 30 days and then it gets rerecorded over."
*774 (DE 32-3, DE 36-3 [pp. 16-18].) Then, after explaining how to save a video, Terry testified that, to his knowledge, he "just [saved] the interior shot." (DE 32-3, DE 36-3 [p. 18].) He could not remember why he did not "do" the exterior shot, and he did not remember looking at or seeing the exterior cameras/video. (DE 32-3, DE 36-3 [pp. 18-20].) Moreover, when asked if he thought "that there was something important on a video that [he] watched, would [he] make sure [it was] downloaded[,]" Terry responded, "Yeah. If it was relative to it and - yeah, I would." (DE 36-3 [p. 19].) Here, it is worth mentioning that, even if Defendants did not receive actual notice, the fact that Terry knew enough to preserve one of the videos (and to choose which one to preserve, no less) demonstrates that Wal-Mart was "on notice that litigation was likely" and that video footage "would be relevant." Fed. R. Civ. P. 37(e). The exterior video footage - which, even on the day of the incident (and certainly after receiving a preservation letter) should clearly have been understood to be relevant to the events in question - should have been saved before automatic re-recording occurred 30 days later, presumably on November 26, 2016.
If the incident itself, let alone a preservation letter, did not alert Defendants to the need to preserve all video evidence, then the policy and the claim form gave Defendant Wal-Mart's agents notice of what needed to be retained. Against this backdrop, the Court has reason to be skeptical of Terry's testimony that he viewed and saved the interior video footage but does not remember viewing and cannot remember why he did not save the exterior footage. In any case, the Court can reasonably conclude that Terry (Defendant Wal-Mart's agent) selectively preserved the interior video. Stated otherwise, Defendants knew or should have known to save the exterior video footage and for whatever reason(s) did not do so, which permitted it to be "overwritten." Accordingly, "the Court may infer an intent to deprive from defendants' actions in this matter." Moody v. CSX Transportation, Inc. , 271 F.Supp.3d 410, 431 (W.D.N.Y. 2017) (inter alia , "While knowing they had a duty to preserve the event recorder data, defendants allowed the original data on the event recorder to be overwritten, and destroyed or recycled Lewandowski's laptop without ever confirming that the data had been preserved in another repository.")[2]
ii. Relevancy of the ESI to the affirmative defenses
The Court recognizes that, in October 2016, Defendant Wal-Mart and/or its agents would not have known which affirmative defenses their attorneys intended to pursue in any related, forthcoming lawsuit. Still, the Court has reviewed the interior video, and it does not show what happened from Plaintiff's perspective , a point that is critical to any affirmative defense that lays at least partial blame upon Plaintiff Culhane. Although Defendants *775 characterize their affirmative defense(s) as claiming that Plaintiff "was contributorily negligent because he positioned himself directly into the path of a descending overhead door[,]" (DE 36 at 17), affirmative defense No. 6 is not so limited. (DE 1 at 21.) To go a step further, the Court disagrees with Defendants that "[t]he manner in which Plaintiff was moving (walking slowly, walking quickly, running) prior to the incident is of little import[,]" (DE 36 at 17), given not only affirmative defense No. 6, but also any other which imparts any degree of fault upon Plaintiff, such as "open and obvious" (No. 2) or "Plaintiff's own conduct" (No. 5). (DE 1 at 21.) As the Court sees it, the affirmative defenses raise questions which could well have been answered by the unpreserved exterior video footage, such as:
• What did Plaintiff see as he approached the door?
• Were there any obstructions in Plaintiff's path?
• At what speed and gait did he approach the door?
• Was Plaintiff distracted as he approached the door?
• Did a Wal-Mart employee beckon him to enter, warn him, speak to him or divert his attention?
• Were any witnesses in the area?
• If, as Plaintiff suggested at oral argument, Defendant Skillman was able to see live video feed of the exterior angle, what would she have been able to see as Plaintiff approached the door?
The pertinent inquiry is not simply, as Defendants put it, "whether Plaintiff placed himself in the path of the descending door[.]" (Id. ) As previously noted, there seems to be no dispute - based on oral argument, the briefing, or the testimony - that the exterior video cameras would have captured another perspective of the incident in question. Offering the jury only a single, interior view of the incident in question is akin to providing a referee or umpire with only one instant replay angle on which to review a call on the goal line or at home plate.
Defendant Wal-Mart's agent selectively preserved the interior video, the Court is permitted to infer Defendant Wal-Mart's intent to deprive based on these actions, and the video at issue goes directly to one or more of Defendants' affirmative defenses. The Court finds, in light of all the circumstances discussed above and pursuant to Fed. R. Civ. P. 37(e)(2), that Defendant Wal-Mart, through its agent, "acted with the intent to deprive another party of the information's use in the litigation ...." Although Plaintiff conceded at oral argument that he can make out his case-in-chief without the exterior video footage, the Court concludes that his ability to rebut the affirmative defenses that assert that the danger was open and obvious and/or that Plaintiff was at fault (comparatively, contributorily or otherwise) has, to a very serious degree, been unfairly and unjustly thwarted. Accordingly, unless Defendants choose to withdraw these affirmative defenses (Nos. 2, 5 & 6), the Court will instruct the jury that it "must presume the information was unfavorable to ..." Defendant Wal-Mart. See Fed. R. Civ. P. 37(e)(2)(B) (emphasis added).
2. Non-ESI and the Court's inherent authority to sanction for failure to preserve
a. Adverse inference instruction factors
Plaintiff seeks "an adverse jury instruction against Defendants regarding the spoliated evidence ..." at issue here, i.e. , the Doss witness statement, the door, and the vendor log. (DE 32 at 27 ¶ 1.) These items are not ESI and, therefore, Rule 37(e) does not apply. Moreover, as at least one Court has stated, "[f]or the Court to impose *776 sanctions under Rule 37... there must be a violation of a discovery order." Bayoil, S.A. v. Polembros Shipping Ltd. , 196 F.R.D. 479, 482 (S.D. Tex. 2000). This does not appear to apply to the circumstances at bar. Although the instant motion cites Defendants' January 29, 2018 and June 14, 2018 discovery responses (see DE 32 ¶¶ 20-28, DE 32-9, DE 32-10), and while there seems to be only one discovery order in this case - the September 6, 2018 order granting in part and denying in part Plaintiff's motion to compel (DE 29) - it was limited to Plaintiff's second request for production of documents No. 13, which sought incident reports for a 15-year period (DE 32-10 at 7).
Instead, as to non-ESI items, the Court considers that "a federal court's inherent powers include broad discretion to craft proper sanctions for spoliated evidence." Adkins v. Wolever , 554 F.3d 650 (6th Cir. 2009) (en banc) (emphasis added). See also Philpot v. LM Commc'ns II of S.C., Inc. , No. 5:17-CV-173-CHB, 2018 WL 3371038, at *4 (E.D. Ky. July 10, 2018) (discussing sanctions, Rules 26 and 37, and the Court's inherent power). As the Sixth Circuit has recognized:
a party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind "; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.
Beaven , 622 F.3d at 553 (quoting Residential Funding Corp. v. DeGeorge Fin. Corp. , 306 F.3d 99, 107 (2d Cir. 2002) (emphases added) ) (further citation omitted).[3]
"[T]he district court has discretion in determining the strength of the inference to be applied." Flagg v. City of Detroit , 715 F.3d 165, 177 (6th Cir. 2013). "Whether an adverse inference instruction is permissive or mandatory is determined on a case-by-case basis, corresponding in part to the sanctioned party's degree of fault." Flagg , 715 F.3d at 178.
b. The witness statement of Assistant Manager Cassie Doss
At her May 15, 2018 deposition, Doss testified about her interaction with Plaintiff on October 27, 2016 and expressly stated that she, Plaintiff, and Defendant Skillman each filled out an incident report. (DE 32-5, DE 36-4 [pp. 20-23].) It appears that Plaintiff Culhane also testified to having written a report. (DE 32 ¶ 42, DE 32-13 [pp. 110-111].) Plaintiff's "customer incident report" and Defendant Skillman's "witness statement" are part of the record. (DE 32-2 at 15-16, 24, 27; DE 36-5 at 5-6.) Defendants contend that a copy of the store's entire file and the "surveillance video footage" was forwarded to CMI on November *777 9, 2016, "approximately two weeks before Defendant received notice that Plaintiff had retained counsel to represent his interests." (DE 36 at 8, DE 36-5.)
Plaintiff claims Ms. Doss's incident report "has never been produced." (DE 32 at 16.) Defendant Wal-Mart claims it "has no record of such statement[,]" and "there is no written statement authored by Ms. Doss in the materials that were forwarded to CMI." (DE 36 at 8.) Interestingly, Defendants' August 1, 2018 discovery response states, inter alia , that "[u]pon information and belief, Ms. Doss did not complete a witness statement." (DE 36-9 at 6.)
In response to the instant motion, Defendants state that "[t]here is no evidence, aside from Ms. Doss's testimony, that such a statement ever existed." (DE 36 at 19.) Still, this means Ms. Doss's testimony is undisputed. Moreover, while Defendants contend that "even if such a statement did exist, it would be of minimal probative value[,]" (id. ), the Court disagrees. For all this Court knows, Doss's witness statement may have included information about what she witnessed in the immediate aftermath of the incident, not only "a regurgitation of the information provided by Ms. Skillman and Plaintiff in their respective statements[,]" (id. ), but also evidence of Plaintiff's damages. Thus, even if Ms. Doss "was not present when the subject incident occurred[,]" (id. ), her statement could potentially be admitted as or contain an opposing party's statement ( Fed. R. Evid. 801(d)(2) ), a present sense impression ( Fed. R. Evid. 803(1) ), an excited utterance ( Fed. R. Evid. 803(2) ), or a statement against interest ( Fed. R. Evid. 804(b)(3) ).
Defendants having focused their argument on relevance, and the Court having concluded that Doss's presumed witness statement may well have been relevant to Plaintiff's proofs, the Court will impose a related adverse jury instruction "should this case go to trial[.]" (DE 32 at 27 ¶ 1.) See , e.g. , Patel v. Havana Bar, Rest. & Catering , No. CIV.A. 10-1383, 2011 WL 6019218, at *1 (E.D. Pa. Dec. 5, 2011) ("An adverse inference instruction regarding the spoliation of the 2008 witness statements will be given at trial[.]"); Patel v. Havana Bar, Rest. & Catering , No. CIV.A. 10-1383, 2011 WL 6029983, at *10 (E.D. Pa. Dec. 5, 2011) (applying adverse inference factors to the spoliation of witness statements). Specifically, in light of the Court's extreme displeasure with the inexplicable disappearance of a crucial witness statement given in the immediate aftermath of the event - especially considering the witness's own unequivocal testimony that she gave such a statement, taken together with Wal-Mart's own internal requirements to "search for and preserve any and all information related to this incident" (DE 32-2 at 13-14) and its failure to preserve the other evidence discussed in this opinion - the Court infers a culpable state of mind and will instruct the jury that it must presume the information contained in Ms. Doss's statement was unfavorable to Defendant Wal-Mart.
c. The "garage door" that was pulled down on Plaintiff
Plaintiff claims that Defendants have "failed to preserve the actual garage door that was pulled down on Mr. Culhane's head." (DE 32 at 16.) It seems that changes to the door began to occur as early as 21 days after the October 27, 2016 incident in question. According to Defendants, door panels were replaced on November 17, 2016 and on several occasions in 2017. (DE 36-6.) To be sure, the earliest of these repairs occurred before the November 21, 2016 "notice letter."
There is some lack of clarity about when the door was replaced. On May 14, 2018, Plaintiff's representative photographed the *778 scene of the incident. (DE 36 at 9, DE 39 at 10.) Then, on June 28, 2018, Robert Aqulina testified that the door was replaced "in the last couple [of] months[,]" in other words during Spring 2018. (DE 32-14 [p. 36].) Because the picture of the door "that actually came down on Plaintiff's head" differs from the photo taken by Plaintiff's representative (compare DE 39 at 11, DE 39 at 10), the Court can assume that the door was replaced before the May 14, 2018 inspection. And, given Aqulina's testimony, the Court can further assume that the door was replaced several months after the August 2, 2017 filing of this lawsuit in state court.
The Court is disturbed that, as Plaintiff states, "the door was replaced after this litigation had already begun, and without notice to Plaintiff's counsel. " (DE 32 at 16 (emphasis in original).) Moreover, the Court agrees that "Defendant Wal-Mart should have known that the replaced garage door was potentially relevant as the mechanism of injury in Plaintiff's accident and should have been preserved for inspection by Plaintiff, his counsel, and Plaintiff's expert(s) in the event of a claim." (DE 32 at 16-17.) The absence of the door in its original form is certainly prejudicial to at least some of Plaintiff's claims, for example, those based on Defendants' maintenance of the door, the premises' allegedly "dangerous and/or defective conditions[,]" (DE 1 at 13-14 ¶¶ 18, 20, 23, 24), or any based on notice of the condition, let alone Defendants' "open & obvious" affirmative defense (No. 2). Notably, Plaintiff informed the Court at oral argument that discovery demonstrated 57 other reported injuries involving this type of door at various Wal-Mart stores around the country.
At the same time, the Court recognizes that this is not a products liability case. As Plaintiff's general allegations state: "Before checking if the doorway was clear, Defendant Skillman proceeded to close the freight door." (DE 1 at 12 ¶ 12.) Moreover, Defendant seems to be correct that "there is no evidence that the door, in and of itself, was defective or malfunctioned in any way." (DE 36 at 18.) And, the Court recognizes, as Defendants contended at the hearing, that door replacement perhaps occurred as part of normal maintenance and without considering its possible relevance to the instant litigation. It would hardly have been reasonable for Defendant Wal-Mart to refrain from maintenance, repair or replacement of the door indefinitely, although Wal-Mart's preservation of the door in some form and notice to Plaintiff of then-forthcoming alterations are distinct issues. Here, too, Defendants have focused their argument on relevance. On balance, the Court concludes that the appropriate remedy is Defendants' production of an exemplar, as offered at oral argument and consistent with the description given during discovery.[4]
d. The "vendor book," as testified to by Skillman
Defendant Skillman testified that "if a vendor comes in, they have to put their name down" in a vendor logbook, although she admitted that Plaintiff did not have to be "checked into a vendor book ...." (DE 32-12, DE 36-8 [pp. 21-22].) Plaintiff sought this evidence to corroborate or discredit Defendant Skillman's testimony. (DE 32 at 17.) In an August 1, 2018 discovery response, Defendants stated that they "are not in possession of any 'vendor book'
*779 entries for October 27, 2016." (DE 36-9 at 4.)
Plaintiff claims that the existence of the vendor log book "was made plain by notes in Skillman's personnel file." (DE 32 ¶ 29, DE 32-11.) During oral argument, Plaintiff's counsel expressed that the vendor book was the least significant piece of evidence at issue in this motion. More importantly, in the Court's view, even if it were convinced that "the vendor log book would have been relevant to the contested issue here [,]" (DE 36 at 19 (emphasis in original) ), such a written log is not the natural subject of retention, i.e. , Defendants did not have "an obligation to preserve" it. Beaven , 622 F.3d at 553. Nor does the Court believe that Defendants were on notice that the vendor book would or could be pertinent to impending or existing litigation. Accordingly, the Court is not convinced that any failure by Defendants to preserve the "vendor book" warrants sanctions.
II. ORDER
Accordingly, Plaintiff's motion for sanctions as to Defendants for failing to preserve evidence (DE 32) is GRANTED IN PART and DENIED IN PART. In sum, for the reasons stated above:
(1) as to the missing exterior video evidence, and consistent with Fed. R. Civ. P. 37(e)(2)(B), unless Defendants choose to withdraw affirmative defense nos. 2, 5 & 6, the Court will instruct the jury that it "must presume the information was unfavorable to" Defendant Wal-Mart.[5]
(2) As to the missing witness statement of Assistant Manager Carrie Doss, and under the Court's inherent power to craft an appropriate remedy, the Court will instruct the jury that it must presume the information was unfavorable to Defendant Wal-Mart.
(3) As to the "garage door" that was pulled down on Plaintiff, and under the Court's inherent power to craft an appropriate remedy, Defendants, at their own expense, shall produce an exemplar for inspection no later than the final pretrial conference. If Defendants fail to do so, then Plaintiff may renew his motion, to the extent it seeks an adverse jury instruction as to this piece of missing evidence. Plaintiff, as his expense, may choose to bring the exemplar to Court, if permitted by the trial judge.
(4) Sanctions for failure to preserve the missing "vendor book" are not warranted.
Unless specifically set forth above, the Court will not require Defendants "to pay any and all court costs and attorney fees associated with this motion[.]" (DE 32 at 27 ¶ 3.)
IT IS SO ORDERED.

Claims Management, Inc. (CMI) is "the casualty claims administrator for Wal-Mart Stores, Inc. and its insurance carriers and, as such, it collects information directly from Wal-Mart stores to administer liability claims." (DE 12 at 2 ¶ 4.)

Defendants prefer to analogize this case to one in which this Court observed that "technically speaking, Defendant did not 'destroy' any videotapes. Rather, Defendant did not set them aside and, during the normal course of its business, the tapes were recorded over." Eby v. Target Corp. , No. 13-10688, 2014 WL 941906, at *5 (E.D. Mich. Mar. 11, 2014) (Cox, J.). (See DE 36 at 16.) However, as another court observed, the only evidence in Eby was that " 'the video cameras did not capture the area where Plaintiff fell and so Target did not retain them.' " Ross v. Home Depot USA Inc. , No. 2:12-CV-743, 2014 WL 2805094, at *4 (S.D. Ohio June 20, 2014) (quoting Eby , 2014 WL 941906, at *5 ) (emphasis added). Here, Terry - Defendant Wal-Mart's agent - does not say that; instead he testified that he "can't remember why" he failed to preserve the exterior shot. (DE 36-3 [p. 18].) Nor does there appear to be a dispute that the exterior video footage would have captured another perspective of the incident in question.

See also Byrd v. Alpha All. Ins. Corp. , 518 F. App'x 380, 384-385 (6th Cir. 2013) (applying Beaven factors to the finding of spoliation); Chrysler Realty Co., LLC v. Design Forum Architects, Inc. , No. 06-CV-11785, 2009 WL 5217992, at *5-*6 (E.D. Mich. Dec. 31, 2009) (Borman, J.) (applying Residential Funding Corp. and reinstating dismissal of Plaintiff's professional negligence claim); Provience v. City of Detroit , No. 10-11719, 2011 WL 7445088, at *7-*10 (E.D. Mich. Nov. 28, 2011) (Michelson, M.J., report and recommendation adopted , No. 10-11719, 2012 WL 683378 (E.D. Mich. Mar. 2, 2012) (Hood, J.); Coach, Inc. v. Dequindre Plaza, L.L.C. , No. 11-CV-14032, 2013 WL 2152038, at *7-*13 (E.D. Mich. May 16, 2013) (Borman, J.); Smith v. Norcold, Inc. , No. 13-10841, 2014 WL 5817258, at *6-*10 (E.D. Mich. Nov. 10, 2014) (Berg, J.); Applebaum v. Target Corp. , No. 11-CV-15035, 2015 WL 13021688, at *4-*6 (E.D. Mich. Mar. 9, 2015) (Levy, J.).

On October 5, 2018, Defendant answered Plaintiff's discovery requests by providing the manufacturer (Overhead Door Corporation, Lewisville, TX) and the make / model (Series 591 Steel Insulated Door by Overhead) of the garage door "involved in the incident in this case[,]" as well as a copy of the "Operational & Maintenance Manual." (DE 36-7 at 2-29.)

This ruling would also apply to Affirmative Defense No. 12, which states that "Defendants fairly and adequately provided notice of any condition on the premises[,]" to the extent it places blame upon Plaintiff for failing to heed a warning.